United States District Court
For the Northern District of California

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT GUICHARD,

Plaintiff,

v.

UNIVERSAL CITY STUDIOS, LLLP; Does 1-1,000,

Defendants.

_______________________________________/

No. C 06-6392 JSW

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Now before the Court is the motion of Plaintiff Robert Guichard for a preliminary injunction. Having carefully reviewed the parties' papers and arguments and the relevant legal authority, the Court hereby DENIES Plaintiff's motion for a preliminary injunction under both the Lanham Act and Business and Professions Code section 17200 *et seq.* on the grounds that Plaintiff has shown neither likelihood of success on the merits of his claims nor irreparable harm.[1]

---

[1] Because declarations and evidence supporting an application for a preliminary injunction "need not conform to the standards for a summary judgment motion or to the Federal Rules of Evidence," Defendants' objections to evidence submitted by Plaintiff are HEREBY OVERRULED. *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984); Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial*, § 13:167 (2004).

**BACKGROUND**

According to his complaint, Plaintiff is a small independent film producer who owns the registration for the internet domain name whisperoftheblue.com. On February 4, 2006, Plaintiff officially launched his WHISPER OF THE BLUE web presence consisting of his proposed, unproduced screenplay by the same title about an ex-Navy SEAL, who sets out to find the sunken ship of gold, the Yorke, and comes face to face with Blackbeard Junior, the notorious modern-day pirate. (Declaration of Robert Guichard ("Guichard Decl."), Ex. 2.) The website also contains information about the proposed film project as well as information about the submersible used for filming underwater and for other diving purposes. (*See id.*)

Plaintiff seeks to enjoin defendant Universal City Studios, LLLP from using "Whisper" as the title of its upcoming motion picture, which has been in production since November 2004. Defendants' upcoming film is a supernatural thriller that revolves around the kidnap of a seemingly meek 10-year-old boy whose kidnappers soon realize is far less innocent than he appears, and, while the boy may be quiet, they had better be careful because his whisper "may be the last thing that they hear." (Declaration of Adam Mehr ("Mher Decl."), Ex. B.) Plaintiff maintains that he has gained exclusive control over the use of the word "whisper" in the title of his project because he has acquired a service mark in the website domain name for "providing information, via the intent, in the field of entertainment, namely, the development, production and distribution of motion picture films." (Complaint at ¶ 11.)

The Court will address the specific facts relevant to this motion as they are pertinent to the analysis.

**ANALYSIS**

The standards for obtaining a preliminary injunction are well established. It is appropriate to issue a preliminary injunction if the moving party establishes either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party. *Stuhlbarg Intern. Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 839-840 (9th Cir. 2001).

In trademark cases, "irreparable injury may be presumed from a showing of likelihood of success on the merits." *GoTo.Com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 n.4 (9th Cir. 2000). "Because injunctive relief prior to trial is a harsh and extraordinary remedy, it is to be granted sparingly and only in cases where the issues are clear and well defined and the plaintiff has established a reasonable certainty of prevailing at trial." *Watermark, Inc. v. United Stations, Inc.*, 219 U.S.P.Q. 31, 32-33 (C.D. Cal. 1982), citing *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 326 F.2d 141 (9th Cir. 1964).

**A. Plaintiff Fails to Show Likelihood of Success on his Lanham Act Claims.**

Plaintiff contends that Defendants' use of a confusingly similar mark constitutes reverse confusion, whereby Defendants' use of the title "Whisper" will cause consumers to believe that Defendants, and not Plaintiff, are the source of the trademarked product, whisperoftheblue.com. *See Dreamwerks Production Group, Inc. v. SKG Studio, d/b/a Dreamworks SKG*, 142 F.3d 1127, 1130 (9th Cir. 1998) ("The question in such cases is whether consumers doing business with the senior user might mistakenly believe that they are dealing with the junior user. More specifically, the question here is whether a reasonable consumer attending a Dreamwerks-sponsored convention might do so believing it is a convention sponsored by DreamWorks.") Plaintiff seeks an order directing Defendants to change the title of their upcoming movie.

To prevail on his Lanham Act claim, Plaintiff must show that he has a valid, protectable trademark interest, and that Defendants' use of the title "Whisper" causes a likelihood of confusion in the minds of the relevant consuming public. *See Comedy III Products, Inc. v. New Line Cinema*, 200 F.3d 593, 594 (9th Cir. 2000); *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979). To show that he has a protectable trademark interest, Plaintiff must have been the first to use the mark in the sale of goods or services. *Garden of Life, Inc. v. Letzer,* 318 F. Supp. 2d 946, 957 (C.D. Cal. 2004) (*quoting Sengoku Works, Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996)). "It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku*, 96

F.3d at 1219. Next, Plaintiff must demonstrate that his mark is inherently distinctive or that it has acquired secondary meaning. *Glow Industries, Inc. v. Lopez*, 252 F. Supp. 2d 962, 977 (C.D. Cal. 2002) (citations omitted). Secondary meaning is "the mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) (citations omitted). Marks that are suggestive, arbitrary or fanciful are inherently distinctive, whereas descriptive marks are entitled to protection only upon a showing of secondary meaning. *Glow*, 252 F. Supp. 2d at 977. Only after Plaintiff demonstrates that he has a valid, protectable trademark interest does the Court turn to the *Sleekcraft* factors.

**1. Plaintiff has not established a protectable trademark interest.**

The Court finds that Plaintiff has not established likelihood of success on the merits of his Lanham Act claims because his described use of the WHISPER OF THE BLUE mark does not satisfy the "use in commerce" requirement necessary to establish priority of use. *See Garden of Life*, 318 F. Supp. 2d at 959. Although Plaintiff alleges that there have been multiple visits to his website since its launch on February 4, 2006, this minimal use does not establish "use in commerce" as required to establish priority. (*See* Guichard Decl., ¶¶ 18-21, Exs. 5-7 (detailing number of hits in recent months)); *but see Garden of Life*, 318 F. Supp. 2d at 958-59 (sporadic use of the mark on various goods and services with no evidence of sales held to be insufficient to constitute trademark use for establishing priority). There is no showing that Plaintiff has used his mark in the actual sale or advertising of services in commerce.

Plaintiff's use of the mark does not establish commercial use such that consumers would associate the WHISPER OF THE BLUE mark with Plaintiff's website. *See Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998) (domain name registration does not necessarily constitute use, standing alone, to confer common law trademark rights); *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1089 (C.D. Cal. 2003) (plaintiff's goals and dreams of selling a high end car under a certain mark do not create trademark rights); *Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 936 (S.D. Tex. 2004) *aff'd Keane v. Fox Television Stations, Inc.*, 129 Fed. Appx. 874 (5th Cir. March 17,

2005) (unpublished); *Silberstein v. Fox Entertainment Group, Inc.,* 424 F. Supp. 2d 616, 633 (S.D.N.Y. 2004) (advertisement in attempt to obtain a deal for a motion picture or television series does not constitute use); 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 16:11 (4th ed. 2004) ("The mere fact that a party conceived the idea of a trademark and discussed it with others does not establish priority as of the date of those events.").

The earliest point in time that Plaintiff's use of his WHISPER OF THE BLUE mark could constitute "use in commerce" is on February 4, 2006 when he launched his web-site. At that time, however, Defendant had already commenced production of its movie "Whisper" and had invested in excess of $12 million on the project. (*See* Mehr Decl., ¶¶ 3-9, Exs. C-M.) The evidence before the Court does not establish priority of use.

Plaintiff's contentions that he retains a protectable trademark interest by virtue of registration of his service mark as a domain name is unsupported. On reply, Plaintiff argues that he is not asserting trademark rights in the title of his screenplay, Whisper of the Blue, but rather he is "only asserting trademark rights in and to WHISPER OF THE BLUE as used on the whisperoftheblue.com website for services in International Class 41 of 'providing information, via the internet, in the field of entertainment, namely, the development, production and distribution of motion picture films.'" (*See* Reply at 3.) This argument fails for several reasons: first, because Plaintiff seeks not to enjoin the use of a similar domain name as used by Defendants but rather to enjoin the use of one word of his domain name as the title of their film; second, because there is no indication that there is any recognizable commercial use of Plaintiff's domain name for the sale of goods or services; and third, there is no indication that Plaintiff's use of the domain name is anything more than allocating an internet address associated with Plaintiff's project, akin to designating an address to locate goods or services. *See Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999) (holding that registration of a domain name may convey trademark rights even before any goods or services are actually sold, if the use is sufficiently public together with the totality of the domain registrant's prior actions); *see also Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 627 (6th Cir. 1998) (Merritt, J., concurring) ("When a domain

name is used only to indicate an address on the Internet and not to identify the source of specific goods and services, the name is not functioning as a trademark."); *see also Panavision*, 141 F.3d at 1324 (domain name registration does not constitute use, standing alone, sufficient to confer common law trademark rights).

Based on the foregoing, Plaintiff has not established a likelihood of success on his Lanham Act claim. The Court need not address the additional factor of determining whether Plaintiff's mark is inherently distinctive or has acquired secondary meaning. Plaintiff has failed to establish priority of use and it is unclear whether he is attempting here to protect only the domain name address or the term "whisper" in the title of a product related to the motion picture industry. Regardless, the Court examines the *Sleekcraft* factors and addresses Plaintiff's claims on the merits.

**2. The *Sleekcraft* Factors Weigh Against Granting a Preliminary Injunction.**

Only after Plaintiff demonstrates that he has a valid, protectable trademark interest does the Court turn to the *Sleekcraft* factors. Although Plaintiff fails to demonstrate he has a protectable trademark interest, the Court still turns to the *Sleekcraft* analysis to demonstrate that the Court finds Plaintiffs fails to establish probable success on the merits of his claim.

To evaluate the likelihood of confusion, the Court analyzes the following factors: (1) strength of the mark; (2) relatedness or proximity of goods; (3) similarity in appearance, sound, and meaning; (4) evidence of actual confusion; (5) marketing channels used; (6) degree of care likely to be exercised by the consumer; (7) Defendants' intent in selecting the mark, and; (8) likelihood of expansion of the product lines. *Sleekcraft*, 599 F.2d at 352. The Court need not address all of the factors, nor must Plaintiff establish that each weighs in its favor in order to establish a likelihood of confusion. *Glow*, 252 F.Supp.2d at 986. The first three factors are especially relevant in reverse confusion cases. *Dreamwerks*, 142 F.3d at 1130. Here, analysis of the *Sleekcraft* factors demonstrates that even if Plaintiff could establish priority of use, he fails to show that the *Sleekcraft* factors weigh in his favor. The similarity of the marks has always been considered the most critical factor in the analysis. *GoTo.com*, 202 F.3d at 1205.

United States District Court
For the Northern District of California

**a. Similarity in Sound, Appearance and Meaning.**

In assessing the similarity of the marks, the Court must examine the sight, sound and meaning of the marks, keeping in mind that the similarities are more important than the differences. *Sleekcraft*, 599 F.2d at 351.

Plaintiff contends that the disputed marks share the initial word in common are and therefore, "effectively identical." (Motion at 14.) Plaintiff further argues that the likelihood of confusion is "further compounded by the fact that as a result of countless observations of people naturally abbreviating the phrase WHISPER OF THE BLUE to WHISPER and using both terms interchangeably." (*Id*. at 15.) In this regard, in addition to his own self-serving declaration, Plaintiff cites two declarations of co-workers who attest generally (and without foundation) that undisclosed "people" were abbreviating the WHISPER OF THE BLUE mark to WHISPER. (*See* Guichard Decl., ¶ 8; Declaration of Gene Prat, ¶ 4; Declaration of Melinda Daugherty, ¶ 3.) In addition, Plaintiff cites a number of cases in which the first, or dominant portion of the mark was sufficiently well-known and considered confusingly similar when used in another trademark. (*See* Motion at 14-15, citing *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1179 (9th Cir. 1988); *Sun Microsytems, Inc. v. Sunriver Corp.*, 1995 WL 390696, *4 (N.D. Cal. 1995).) These cases stand for the limited proposition that there is a danger of customer confusion in instances where strong prominent marks, with distinctive dominant abbreviations, are adopted by a potential infringer. Regardless of the merit of the co-workers' general claims that people may abbreviate the title of Plaintiff's project, there is no evidence before the Court that Plaintiff's mark in this case has gained prominence or distinction by its first word.

In addition, consumers in the motion picture industry "expect a title to communicate a message about book or movie, but they do not expect it to identify the publisher or producer." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002). Sophisticated consumers of motion pictures are unlikely to confuse the one-word title of a psychological horror film about the kidnapping of a seemingly innocent young boy who turns out to have unexpected

powers of control with a multi-word website identifying a proposed and unproduced screenplay about an underwater pirate adventure.

Therefore, although there is similarity in the first word of the disputed marks, this factor weighs in favor of Defendants.

**b. Strength of the Mark.**

In a reverse confusion case, the analysis of the strength of the mark focuses on the strength of the junior user's mark and the ability of the junior user's mark to overpower the senior user's mark. 3 J. McCarthy, *McCarthy on Trademarks and Unfair Competition*, section 23:10 (4th ed. 2004). Generally, film titles like WHISPER OF THE BLUE are descriptive and, hence, weak. *Morgan Creek Productions, Inc. v. Capital Cities/ABC*, No. CV-89-5463, 1991 WL 352619 at *6 (C.D. Cal. October 28, 1991); *Orion Pictures Co., Inc. v. Dell Publishing Co., Inc.*, 471 F.Supp.392, 395-97 (S.D.N.Y. 1979). Here, Defendants' superior financial position enables them to strengthen their otherwise weak mark in the title WHISPER through advertising and marketing. In this way, Defendants have the ability to overpower Plaintiff's mark. Compared to Defendants, Plaintiff's marketing and advertising capabilities are drastically weaker, and consist mainly of Plaintiff in collaboration with a limited number of people, engaging on a "labor-intensive Internet marketing campaign to generate traffic" for the website. (*See* Guichard Decl., ¶ 17.)

The fact that Defendants may be able to overpower Plaintiff's mark, however, does not mean that this factor weighs in favor of Plaintiff. The WHISPER OF THE BLUE mark is conceptually weak due to the fact that the web-presence was launched just over a year and a half ago. Plaintiff's mark may be gaining strength, as evidenced by the fact that there were apparently 40,354 visits to whisperoftheblue.com website between August 9, 2006 and October 7, 2006. (*See* Guichard Decl., Ex. 5.) Despite this fact, there are several third party uses of the term "Whisper" or variations thereof in literary titles that reduce the chances of consumer confusion, and thus, weaken the mark. (*See* Declaration of Mary Ann Fortuna, ¶¶ 5-8, Ex. A). *See also* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 11:88 (4th ed. 2004) ("evidence of extensive third-party use on a wide range of goods and services

does tend to weaken strength and narrow the scope of protection."). Taken together, and notwithstanding Defendants' ability to overpower Plaintiff's mark, the relative weakness of Plaintiff's mark reduces the chance of consumer confusion.

This factor therefore weighs in favor of Defendants.

**c. Relatedness or Proximity of the Goods and Marketing Channels.**

The degree of competition and relatedness of the two users' goods or services is relevant to whether the reasonably prudent consumer will be confused by similar marks. The danger of consumer confusion is enhanced when goods are related or complementary. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992). To the extent that Plaintiff and Defendants are in the business of creating and producing films, the parties operate in same industry and potentially compete with one another. However, the relatedness or proximity of the goods diverges upon closer examination of each party's mark. Plaintiff maintains that he is not seeking trademark protection in the title of his screenplay (*see* Reply at 3), but only that his mark relates to his "whisperoftheblue.com" web-presence, which encompasses a combination of goods (the WHISPER OF THE BLUE screenplay and related information) and services (*e.g.*, the submersible and related diving experiences offered).

Defendants' mark is limited to the title of their film. While Defendants may promote their film through a website, there is no indication that they offer, or intend to offer, the same type of "web-presence" that represents the central premise underlying Plaintiff's mark. In fact, according to Defendants' counsel at oral argument on this motion, Defendants' film will not be marketed by means of a website with the title, Whisper, in it. In short, the goods and services associated with the marks are not closely related such that consumers would likely be confused.

Based on the foregoing, the Court finds that this factor weighs in favor of Defendants.

**d. Evidence of Actual Confusion.**

Under the Lanham Act, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). Likelihood of confusion exists when customers viewing the mark would probably assume that the product is associated with the course of a different product identified

by a similar mark. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc*., 826 F.2d 837, 845 (9th Cir. 1987). Evidence of actual confusion is persuasive proof that future confusion is likely. *Id.* While "[e]vidence that the use of the two marks has already led to confusion is persuasive proof that future confusion is likely," the converse is not true. *Sleekcraft*, 599 F.2d at 352. Indeed, even where a plaintiff files suit before the defendant began using the allegedly infringing mark, the court may nevertheless find for the plaintiff. *GoTo.com*., 202 F.3d at 1208, citing *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999).

Plaintiff does not proffer evidence of actual confusion. Instead, he maintains that at preliminary injunction, there is no requirement that he provide evidence of actual confusion. It is not necessary that Plaintiff show actual confusion to obtain a preliminary injunction in this circuit. *See Cooper v. Revolution Records, Inc*., 1997 WL 196650, *5 (9th Cir. 1997), citing *Academy of Motion Picture Arts*, 944 F.2d 1446, 1456 (9th Cir. 1991).

During oral argument on this motion, in an effort to establish possibility of confusion, Plaintiff introduced an exhibit consisting of a number of Google searches he had conducted using the terms "whisper underwater production," "whisper underwater actors," and "whisper underwater 'feature film.'" (Plaintiff's Ex. 1.) The searches pulled up listings that included both the website for Plaintiff's proposed film project and other information and listing with reference to Defendants' upcoming motion picture. However, the search is not probative as the search function calls up any internet listing with the search terms, including any motion picture with the search words in the same listing. The searches are far too broad and not probative as to likelihood of confusion. There is no evidence of actual or likelihood of confusion in the record.

Having determined that the foregoing *Sleekcraft* factors weigh in favor of Defendants, it is not necessary to evaluate the remaining factors. Based on the foregoing analysis, Plaintiff's motion for a preliminary injunction under the Lanham Act is DENIED.

**C. Plaintiff Fails to Demonstrate a Likelihood of Success on his Section 17200 Claims.**

At oral argument on this motion, Plaintiff maintained that he claims Defendants violated California Business and Professions Code section 17200 for unlawful business practices for

United States District Court
For the Northern District of California

their alleged conduct in violation of the Lanham Act, and for unfair business practices for effectively erecting a barrier to entry and excluding competitors from the theatrical motion picture market by registering titles with a central title registration bureau made up of six major producers and distributors of motion pictures. The Court does not find that the allegations of Defendants' conduct amounts to a likely violation of the Lanham Act. With regard to the allegations of unfair business practices, the essence of Plaintiff alleges that, by reason of their use and registration of the title "Whisper" before the Title Registration Bureau ("TRB"), Defendants preclude the production and distribution of motion pictures by small, independent film makers because of the restriction on the use of registered titles. However, the TRB Rules only manage, among its own members, the priority of rights allotted to the users of various titles for motion pictures. The Court notes that the TRB Rules grant priority of rights similar, but not identical to, trademark rights, which, as a matter of law, do not harm competition in the market associated with the mark. *See Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 56 (2d Cir. 1997) (holding that a trademark is, by its nature, non-exclusionary. And "does not confer a legal monopoly on an good or idea; it confers rights to a name only."); *see also California Packing Corp. v. Sun-Maid Raisin Growers of California*, 165 F. Supp. 245, 250-51 (S.D. Cal. 1958) (holding that private agreement limiting use of a certain mark does not prevent competitor from engaging in competitive production and sales in the market, but only restricts the use of the name, and therefore does not raise antitrust concerns).

Plaintiff fails to show a probability of success on his claim for violation of California Business and Professions Code section 17200.

**D. Plaintiff Cannot Establish Irreparable Harm.**

Plaintiff fails to demonstrate that he will be irreparably harmed if the Court does not enter a preliminary injunction enjoining Defendants from using the title "Whisper." Plaintiff contends that irreparable harm is presumed as a matter of law because there is always irreparable injury where there is an infringement of a valid trademark. (*See* Motion at 7, citing *GoTo.com*, 202 F.3d at 1204.) However, because the Court has not found likelihood of trademark infringement, such a presumption does not follow. *See Wham-O v. Paramount*

United States District Court
For the Northern District of California

*Pictures Corp.*, 286 F. Supp. 2d 1254, 1264 (N.D. Cal. 2003) ("[b]ecause plaintiff has not established a likelihood of success on the merits, moreover, plaintiff is not entitled to a presumption of irreparable injury.")

In the alternative, Plaintiff contends that he will suffer irreparable harm if an injunction is not entered because Defendants' widespread use of the similar mark "will effectively and permanently destroy Plaintiff's WHISPER OF THE BLUE mark, and thereby destroying the WHISPER OF THE BLUE web presence" because: (1) Plaintiff's mark "cannot blossom into its full commercial potential and is effectively foreclosed from its natural zone of expansion"; (2) the goodwill in Plaintiff's mark will be destroyed if "Whisper" is unsuccessful; (3) Defendants' marketing campaign "will launch a literal tidal wave of publicity that will drown Plaintiff's mark and all goodwill"; (4) Plaintiff's business model is based upon the central premise creating a synergy between the WHISPER OF THE BLUE web presence and the WHISPER OF THE BLUE film project; (5) without the web presence, Plaintiff will lose his only path to marketing his "offerings"; (6) without the cachet of the WHISPER OF THE BLUE theatrical motion picture, he will not be able to attract talented people, sponsors and investors to work with him; and (7) Plaintiff has already invested precious limited resources into his unique brand identity. (*See* Motion at 8-9.) The irreparable injuries cited, however, are speculative because Plaintiff has not yet commenced production of his film. *Carribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.") He identifies no lost customers, talent, financing, or goodwill as a result of Universal's release of "Whisper" to warrant granting injunctive relief. The evidence presented in connection with his motion demonstrates that due to the differences in the marks and the goods and services related thereto, the fate of Plaintiff's web-presence is not tied to the success or failure of Defendants' film production, "Whisper."

United States District Court
For the Northern District of California

**CONCLUSION**

Having determined that Plaintiff has not demonstrated likelihood of success on the merits of his claims or that he will be irreparably harmed, his motion for preliminary injunction is HEREBY DENIED.

**IT IS SO ORDERED.**

Dated: June 15, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE