**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GUICHARD, | |
| Plaintiff, | No. C 06-6392 JSW |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| UNIVERSAL CITY STUDIOS, LLLP; Does 1-1,000, | |
| Defendants. | |

Now before the Court is the motion of Defendant Universal City Studios, LLLP ("Universal") for summary judgment. Having carefully reviewed the parties' papers and arguments and the relevant legal authority, the Court hereby GRANTS Defendant's motion.

**BACKGROUND**

According to his complaint, Plaintiff is a small independent film producer who owns the registration for the internet domain name whisperoftheblue.com. On February 4, 2006, Plaintiff officially launched his WHISPER OF THE BLUE web presence consisting of his proposed, unproduced screenplay by the same title about an ex-Navy SEAL, who sets out to find the

1  sunken ship of gold, the Yorke, and comes face to face with Blackbeard Junior, the notorious
2  modern-day pirate. The website also contains information about the proposed film project as
3  well as information about the submersible used for filming underwater and for other diving
4  purposes.

5  By his lawsuit, Plaintiff seeks to enjoin Universal from using "Whisper" as the title of
6  its film, which has been in production since November 2004. Defendant's film is a supernatural
7  thriller that revolves around the kidnap of a seemingly meek 10-year-old boy whose kidnappers
8  soon realize is far less innocent than he appears, and, while the boy may be quiet, they had
9  better be careful because his whisper "may be the last thing that they hear." Plaintiff maintains
10 that he has gained exclusive control over the use of the word "whisper" in the title of his project
11 because he has acquired a service mark in the website domain name for "providing information,
12 via the internet, in the field of entertainment, namely, the development, production and
13 distribution of motion picture films."

14 Plaintiff moved for a preliminary injunction in this matter which was denied by order
15 dated June 15, 2007. Plaintiff appealed the decision and the Ninth Circuit Court of Appeals
16 affirmed this Court's decision in a judgment dated February 7, 2008. Defendant moves for
17 summary judgment on all of Plaintiff's claims. The Court will address the specific facts
18 relevant to this motion as they are pertinent to the analysis.

## ANALYSIS

**A.    Legal Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light

2

most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care to adequately point a court to the evidence precluding summary judgment because a court is "'not required to comb the record to find some reason to deny a motion for summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.   Plaintiff Cannot Show a Protectible Interest on his Lanham Act Claims.**

In his Lanham Act claim, Plaintiff contends that Defendant's use of a confusingly similar mark constitutes reverse confusion, whereby Defendant's use of the title "Whisper" will cause consumers to believe that Defendant, and not Plaintiff, is the source of the trademarked

3

1 product, whisperoftheblue.com. *See Dreamwerks Production Group, Inc. v. SKG Studio, d/b/a*
2 *Dreamworks SKG,* 142 F.3d 1127, 1130 (9th Cir. 1998) ("The question in such cases is whether
3 consumers doing business with the senior user might mistakenly believe that they are dealing
4 with the junior user.  More specifically, the question here is whether a reasonable consumer
5 attending a Dreamwerks-sponsored convention might do so believing it is a convention
6 sponsored by DreamWorks.")  Plaintiff seeks an order directing Defendant to change the title of
7 their upcoming movie.
8       To prevail on his Lanham Act claim, Plaintiff must show that he has a valid, protectable
9 trademark interest, and that Defendant's use of the title "Whisper" causes a likelihood of
10 confusion in the minds of the relevant consuming public.  *See Comedy III Products, Inc. v. New*
11 *Line Cinema,* 200 F.3d 593, 594 (9th Cir. 2000); *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341,
12 348-49 (9th Cir. 1979).  To show that he has a protectable trademark interest, Plaintiff must
13 have been the first to use the mark in the sale of goods or services.  *Garden of Life, Inc. v.*
14 *Letzer,* 318 F. Supp. 2d 946, 957 (C.D. Cal. 2004) (*quoting Sengoku Works, Ltd. v. RMC Int'l,*
15 *Ltd.,* 96 F.3d 1217, 1219 (9th Cir. 1996)).  "It is axiomatic in trademark law that the standard
16 test of ownership is priority of use.  To acquire ownership of a trademark it is not enough to
17 have invented the mark first or even to have registered it first; the party claiming ownership
18 must have been the first to actually use the mark in the sale of goods or services."  *Sengoku,* 96
19 F.3d at 1219.  Next, Plaintiff must demonstrate that his mark is inherently distinctive or that it
20 has acquired secondary meaning.  *Glow Industries, Inc. v. Lopez,* 252 F. Supp. 2d 962, 977
21 (C.D. Cal. 2002) (citations omitted).  Secondary meaning is "the mental association by a
22 substantial segment of consumers and potential consumers between the alleged mark and a
23 single source of the product."  *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th
24 Cir. 1985) (citations omitted).  Marks that are suggestive, arbitrary or fanciful are inherently
25 distinctive, whereas descriptive marks are entitled to protection only upon a showing of
26 secondary meaning.  *Glow,* 252 F. Supp. 2d at 977.  Only after Plaintiff demonstrates that he
27 has a valid, protectable trademark interest does the Court turn to the *Sleekcraft* factors.
28       **1.**     **Plaintiff has not established a protectable trademark interest.**

The Court finds that Plaintiff's Lanham Act claim fails because his described use of the WHISPER OF THE BLUE mark does not satisfy the "use in commerce" requirement necessary to establish priority of use. *See Garden of Life,* 318 F. Supp. 2d at 959. Although Plaintiff alleges that there have been multiple visits to his website since its launch on February 4, 2006, this minimal use does not establish "use in commerce" as required to establish priority. (*See* Declaration of Robert Guichard ("Guichard Decl."), ¶ 7-8, Exs. C, D; *but see Garden of Life*, 318 F. Supp. 2d at 958-59 (sporadic use of the mark on various goods and services with no evidence of sales held to be insufficient to constitute trademark use for establishing priority).) There is no showing that Plaintiff has used his mark in the actual sale or advertising of services in commerce.

Plaintiff's use of the mark does not establish commercial use such that consumers would associate the WHISPER OF THE BLUE mark with Plaintiff's website. *See Panavision Int'l L.P. v. Toeppen,* 141 F.3d 1316, 1324 (9th Cir. 1998) (domain name registration does not necessarily constitute use, standing alone, to confer common law trademark rights); *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha,* 290 F. Supp. 2d 1083, 1089 (C.D. Cal. 2003) (plaintiff's goals and dreams of selling a high end car under a certain mark do not create trademark rights); *Keane v. Fox Television Stations, Inc.,* 297 F. Supp. 2d 921, 936 (S.D. Tex. 2004) *aff'd Keane v. Fox Television Stations, Inc.,* 129 Fed. Appx. 874 (5th Cir. March 17, 2005) (unpublished); *Silberstein v. Fox Entertainment Group, Inc.,* 424 F. Supp. 2d 616, 633 (S.D.N.Y. 2004) (advertisement in attempt to obtain a deal for a motion picture or television series does not constitute use); 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 16:11 (4th ed. 2004) ("The mere fact that a party conceived the idea of a trademark and discussed it with others does not establish priority as of the date of those events.").

The earliest point in time that Plaintiff's use of his WHISPER OF THE BLUE mark could constitute "use in commerce" is on February 4, 2006 when he launched his website. At that time, however, Defendant had already commenced production of its movie "Whisper" and had invested in excess of $12 million on the project. (*See* Declaration of Adam Mehr, ¶¶ 5-8, Exs. C-M.) The evidence before the Court does not establish priority of use.

5

1    Plaintiff's contentions that he retains a protectable trademark interest by virtue of
2 registration of his service mark as a domain name is unsupported.  Plaintiff contends that he
3 does not assert trademark rights in the title of his screenplay, Whisper of the Blue, but rather he
4 asserts trademark rights in and to WHISPER OF THE BLUE as used on the
5 whisperoftheblue.com website for services in International Class 41 of 'providing information,
6 via the internet, in the field of entertainment, namely, the development, production and
7 distribution of motion picture films.'" (*See* Opp. Br. at 8-10.)  This argument fails for several
8 reasons:  first, because Plaintiff seeks not to enjoin the use of a similar domain name as used by
9 Defendant but rather to enjoin the use of one word of his domain name as the title of their film;
10 second, because there is no indication that there is any recognizable commercial use of
11 Plaintiff's domain name for the sale of goods or services; and third, there is no indication that
12 Plaintiff's use of the domain name is anything more than allocating an internet address
13 associated with Plaintiff's project, akin to designating an address to locate goods or services.
14 *See Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1052
15 (9th Cir. 1999) (holding that registration of a domain name may convey trademark rights even
16 before any goods or services are actually sold, if the use is sufficiently public together with the
17 totality of the domain registrant's prior actions); *see also Data Concepts, Inc. v. Digital*
18 *Consulting, Inc.*, 150 F.3d 620, 627 (6th Cir. 1998) (Merritt, J., concurring) ("When a domain
19 name is used only to indicate an address on the Internet and not to identify the source of specific
20 goods and services, the name is not functioning as a trademark."); *see also Panavision,* 141
21 F.3d at 1324 (domain name registration does not constitute use, standing alone, sufficient to
22 confer common law trademark rights).

23    Based on the foregoing, Plaintiff cannot prevail on his Lanham Act claim.  The Court
24 need not address the additional factor of determining whether Plaintiff's mark is inherently
25 distinctive or has acquired secondary meaning.  Plaintiff has failed to establish priority of use
26 and it is unclear whether he is attempting here to protect only the domain name address or the
27 term "whisper" in the title of a product related to the motion picture industry.  Regardless, the
28 Court examines the *Sleekcraft* factors and addresses Plaintiff's claims on the merits.

6

### 2. The *Sleekcraft* Factors Weigh Against Granting a Preliminary Injunction.

Only after Plaintiff demonstrates that he has a valid, protectable trademark interest does the Court turn to the *Sleekcraft* factors. Although Plaintiff fails to demonstrate he has a protectible trademark interest, the Court still turns to the *Sleekcraft* analysis to demonstrate that the Court finds Plaintiff cannot success on the merits of his claim.

To evaluate the likelihood of confusion, the Court analyzes the following factors: (1) strength of the mark; (2) relatedness or proximity of goods; (3) similarity in appearance, sound, and meaning; (4) evidence of actual confusion; (5) marketing channels used; (6) degree of care likely to be exercised by the consumer; (7) Defendant's intent in selecting the mark, and; (8) likelihood of expansion of the product lines. *Sleekcraft*, 599 F.2d at 352. The Court need not address all of the factors, nor must Plaintiff establish that each weighs in its favor in order to establish a likelihood of confusion. *Glow,* 252 F. Supp. 2d at 986. The first three factors are especially relevant in reverse confusion cases. *Dreamwerks,* 142 F.3d at 1130. Here, analysis of the *Sleekcraft* factors demonstrates that even if Plaintiff could establish priority of use, he fails to show that the *Sleekcraft* factors weigh in his favor. The similarity of the marks has always been considered the most critical factor in the analysis. *GoTo.com*, 202 F.3d at 1205.

#### a. Similarity in Sound, Appearance and Meaning.

In assessing the similarity of the marks, the Court must examine the sight, sound and meaning of the marks, keeping in mind that the similarities are more important than the differences. *Sleekcraft*, 599 F.2d at 351.

Plaintiff contends that the disputed marks share the initial word in common "are not merely similar, but effectively identical." (Opp. Br. at 17.) Plaintiff further argues that the likelihood of confusion is "further compounded by the fact that Plaintiff, since launch of his website, has been abbreviating the phrase WHIPSER OF THE BLUE to WHISPER and using both terms interchangeably to identify his offering on the whisperoftheblue.com. (Guichard Decl., ¶ 8, Exs. B and Z.) The uncontroverted evidence of the whisperoftheblue.com screen captures clearly shows extensive use of the abbreviated term 'Whisper'; which is clearly

7

1  intended and perceived by customers as a source identified of Plaintiff's offerings on his web
2  presence. (Guichard Decl. Ex. B and Z.)" (Opp. Br. at 17.)

3  In addition, Plaintiff cites a number of cases in which the first, or dominant portion of
4  the mark was sufficiently well-known and considered confusingly similar when used in another
5  trademark. (*See* Opp. Br. at 17, citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175,
6  1179 (9th Cir. 1988); *Sun Microsytems, Inc. v. Sunriver Corp.*, 1995 WL 390696, *4 (N.D. Cal.
7  1995).) These cases stand for the limited proposition that there is a danger of customer
8  confusion in instances where strong prominent marks, with distinctive dominant abbreviations,
9  are adopted by a potential infringer. Regardless of the merit of Plaintiff's general claims that
10 people may abbreviate the title of his project, there is no evidence before the Court that
11 Plaintiff's mark in this case has gained prominence or distinction by its first word.

12 In addition, consumers in the motion picture industry "expect a title to communicate a
13 message about book or movie, but they do not expect it to identify the publisher or producer."
14 *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002). Sophisticated consumers
15 of motion pictures are unlikely to confuse the one-word title of a psychological horror film
16 about the kidnapping of a seemingly innocent young boy who turns out to have unexpected
17 powers of control with a multi-word website identifying a proposed and unproduced screenplay
18 about an underwater pirate adventure.

19 Therefore, although there is similarity in the first word of the disputed marks, this factor
20 weighs in favor of Defendant.

21 **b.     Strength of the Mark.**

22 In a reverse confusion case, the analysis of the strength of the mark focuses on the
23 strength of the junior user's mark and the ability of the junior user's mark to overpower the
24 senior user's mark. 3 J. McCarthy, *McCarthy on Trademarks and Unfair Competition*, section
25 23:10 (4th ed. 2004). Generally, film titles like WHISPER OF THE BLUE are descriptive and,
26 hence, weak. *Morgan Creek Productions, Inc. v. Capital Cities/ABC,* No. CV-89-5463, 1991
27 WL 352619 at *6 (C.D. Cal. October 28, 1991); *Orion Pictures Co., Inc. v. Dell Publishing Co.,*
28 *Inc.,* 471 F. Supp.392, 395-97 (S.D.N.Y. 1979). Here, Defendant's superior financial position

1  enables it to strengthen its otherwise weak mark in the title WHISPER through advertising and
2  marketing. In this way, Defendant has the ability to overpower Plaintiff's mark. Compared to
3  Defendant, Plaintiff's marketing and advertising capabilities are drastically weaker, and consist
4  mainly of Plaintiff in collaboration with a limited number of people, engaging on a "labor-
5  intensive Internet marketing campaign to generate traffic" for the website. (*See* Guichard Decl.,
6  ¶ 34.)

7  The fact that Defendants may be able to overpower Plaintiff's mark, however, does not
8  mean that this factor weighs in favor of Plaintiff. The WHISPER OF THE BLUE mark is
9  conceptually weak due to the fact that the web-presence was launched just over a year and a
10 half ago. Plaintiff's mark may be gaining strength, as evidenced by the fact that there were
11 apparently 40,354 visits to whisperoftheblue.com website between August 9, 2006 and October
12 7, 2006. (*See id*., Ex. E.) Despite this fact, there are several third party uses of the term
13 "Whisper" or variations thereof in literary titles that reduce the chances of consumer confusion,
14 and thus, weaken the mark. (*See* Declaration of Mary Ann Fortuna, ¶¶ 5-8, Ex. A). *See also* 2
15 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 11:88 (4th ed. 2004)
16 ("evidence of extensive third-party use on a wide range of goods and services does tend to
17 weaken strength and narrow the scope of protection."). Taken together, and notwithstanding
18 Defendant's ability to overpower Plaintiff's mark, the relative weakness of Plaintiff's mark
19 reduces the chance of consumer confusion.

20 This factor therefore weighs in favor of Defendant.

### c. Relatedness or Proximity of the Goods and Marketing Channels.

22 The degree of competition and relatedness of the two users' goods or services is relevant
23 to whether the reasonably prudent consumer will be confused by similar marks. The danger of
24 consumer confusion is enhanced when goods are related or complementary. *E. & J. Gallo*
25 *Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992). To the extent that Plaintiff
26 and Defendant are in the business of creating and producing films, the parties operate in same
27 industry and potentially compete with one another. However, the relatedness or proximity of
28 the goods diverges upon closer examination of each party's mark. Plaintiff maintains that he is

9

1  not seeking trademark protection in the title of his screenplay, but only that his mark relates to
2  his "whisperoftheblue.com" web-presence, which encompasses a combination of goods (the
3  WHISPER OF THE BLUE screenplay and related information) and services (*e.g.*, the
4  submersible and related diving experiences offered).

5  Defendant's mark is limited to the title of its film. While Defendant may promote its
6  film through a website, there is no indication that it offers, or intends to offer, the same type of
7  "web-presence" that represents the central premise underlying Plaintiff's mark. This Court
8  found that the website used to publicize Defendant's film project was a third-party Gold
9  Circle's website which did not use the word "whisper" in the title. (Order dated June 15, 2007
10 at 5.) In short, the goods and services associated with the marks are not closely related such
11 that consumers would likely be confused.

12 Based on the foregoing, the Court finds that this factor weighs in favor of Defendant.

### d. Evidence of Actual Confusion.

14 Under the Lanham Act, "the ultimate test is whether the public is likely to be deceived
15 or confused by the similarity of the marks." *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S.
16 763, 780 (1992). Likelihood of confusion exists when customers viewing the mark would
17 probably assume that the product is associated with the course of a different product identified
18 by a similar mark. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc*., 826 F.2d 837, 845 (9th Cir.
19 1987). Evidence of actual confusion is persuasive proof that future confusion is likely. *Id.*
20 While "[e]vidence that the use of the two marks has already led to confusion is persuasive proof
21 that future confusion is likely," the converse is not true. *Sleekcraft,* 599 F.2d at 352. Indeed,
22 even where a plaintiff files suit before the defendant began using the allegedly infringing mark,
23 the court may nevertheless find for the plaintiff. *GoTo.com*., 202 F.3d at 1208 (citing
24 *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th
25 Cir. 1999)).

26 Plaintiff offers no evidence of actual confusion. (*See* Opp. Br. at 21.) Therefore, this
27 factor weighs in favor of Defendant.

28

1   Having determined that the foregoing *Sleekcraft* factors weigh in favor of Defendant, it
2   is not necessary to evaluate the remaining factors.  The Ninth Circuit, in affirming this Court's
3   order denying Plaintiff's motion for a preliminary injunction, concluded that "[t]he district
4   court's conclusion that Guicahrd's web presence at whisperoftheblue.com was not a use in
5   commerce sufficient to create a protectable trademark interest is consistent with our precedent.
6   *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999)."
7   Based on the foregoing analysis, Defendants' motion for summary judgment of Plaintiff's
8   Lanham Act claim is GRANTED.

9   **D.   Plaintiff Cannot Prevail on His Section 17200 Claims.**

10  Plaintiff's claim under California Business and Professions Code section 17200 for
11  unlawful business practices is premised upon Defendant's alleged conduct in violation of the
12  Lanham Act, and for unfair business practices for effectively erecting a barrier to entry and
13  excluding competitors from the theatrical motion picture market by registering titles with a
14  central title registration bureau made up of six major producers and distributors of motion
15  pictures.  The Court does not find that the allegations of Defendant's conduct amounts to a
16  likely violation of the Lanham Act.  With regard to the allegations of unfair business practices,
17  the essence of Plaintiff alleges that, by reason of its use and registration of the title "Whisper"
18  before the Title Registration Bureau ("TRB"), Defendant precludes the production and
19  distribution of motion pictures by small, independent film makers because of the restriction on
20  the use of registered titles.  However, the TRB Rules only manage, among its own members, the
21  priority of rights allotted to the users of various titles for motion pictures.  The Court notes that
22  the TRB Rules grant priority of rights similar, but not identical to, trademark rights, which, as a
23  matter of law, do not harm competition in the market associated with the mark.  *See Clorox Co.
24  v. Sterling Winthrop, Inc.*, 117 F.3d 50, 56 (2d Cir. 1997) (holding that a trademark is, by its
25  nature, non-exclusionary. And "does not confer a legal monopoly on an good or idea; it confers
26  rights to a name only."); *see also California Packing Corp. v. Sun-Maid Raisin Growers of
27  California*, 165 F. Supp. 245, 250-51 (S.D. Cal. 1958) (holding that private agreement limiting
28  use of a certain mark does not prevent competitor from engaging in competitive production and

sales in the market, but only restricts the use of the name, and therefore does not raise antitrust concerns).

As the Ninth Circuit explained in this matter, "as Guichard is suing with respect to his website, not a motion picture, he cannot demonstrate that the Title Registration Association of America has caused him any antitrust injury. Accordingly, no viable cause of action under California Business and Professions Code section 17200 could be sustained. *See Sprewell v. Golden Gate Warriors*, 266 F.3d 979, 992 (9th Cir. 2001) (noting that such a claim requires one to demonstrate engagement in an unlawful or unfair business practice)." Plaintiff cannot prevail on his claim for violation of California Business and Professions Code section 17200. Based on the foregoing analysis, Defendant's motion for summary judgment of Plaintiff's California Business and Professions Code section 17200 claim is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: February 13, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

GUICHARD et al,

        Plaintiff,

  v.

UNIVERSAL CITY STUDIOS, LLLP, L.P. et al,

        Defendant.

Case Number: CV06-06392 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 13, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Daniel Mark Mayeda
Edward A. Ruttenberg
Leopold Petrich & Smith
2049 Century Park East
Ste 3110
Los Angeles, CA 90067-3274

Robert Guichard
1578 35th Avenue
San Francisco, CA 94122

Dated: February 13, 2008

*Jennifer Ottolini*
Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk